Spear, J.
The case seems to have turned in the superior-court upon the question whether or not the receipts delivered by the defendants to Baum & Co., were warehouse receipts, and much argument has been adduced in the briefs of counsel upon that question. But we think the real question is not whether those papers w&re, in form or substance, warehouse receipts, but whether or not the firm which executed and put-them in circulation may, as against an innocent holder, be- *259 permitted to set up any claim to the property, or insist upon any condition of delivery other than those contained in the instruments. Can they now allege that the purchase-money has not been paid, and make such payment a condition of delivery of the goods? In other words, do the facts show a case of estoppel in pais?
The general doctrine of estoppel is stated in varying forms. Blackstone says an estoppel arises “ where a man hath done some act, or executed some deed, which estops or precludes him from averring anything to the contrary.” Coke says it arises “ where a man is concluded, by his own act or acceptance, to say the truth.”
Swan, J., in McAfferty v. Conover, 7 Ohio St. 105, observes that “ estoppels in pais are not allowed to operate, except where, in good conscience and honest dealing, the party ought not to be permitted to gainsay his admission. And, in general, the act or declaration of the party must be willful, that is, with knowledge of the facts upon which any right he may have must depend, or with an intention to deceive the other party,”' though, farther on in the same case, he adds: “ Whether it be a rule without exception, that an estoppel in pais must always be accompanied with the willful act or declaration of the party upon whom it is to operate, we do not decide.”
In Beardsley v. Foot, 14 Ohio St. 416, Scott, J., remarks : “We think an estoppel may arise from admissions and declarations made without any fraudulent purpose. The circumstances may be such, that ‘good conscience and honest dealing’ may require a party to bear the consequences of his own negligent mistake, instead of throwing the resulting loss upon another whom he has misled.” In this case Foot had purchased land upon which Beardsley had a lien. Before doing so he applied to the latter — whom he found attending an agricultural fair — for the purpose of ascertaining whether he held any claim or lien upon the land, informing him that he (Foot) expected to purchase if he could get a good title. Beardsley, in reply, gave a positive assurance that he had none, and Foot, relying on this assurance, purchased and paid for the land. An examination of the county records would have disclosed *260 the lien. Beardsley was held estopped to set up his lien as against Foot’s title. The syllabus is: “Admissions m pats, though made in good faith, may yet be made under such circumstances as to operate by way of estoppel, and preclude the party from afterward gainsaying them.”
In McKenzie v. Steele, 18 Ohio St. 41, Welch, J., says: “ To work an estoppel there must be prejudice to the party setting it up, and also fraud or bad faith — or their equivalent, gross negligence — in the party to be estopped.”
In Pickard v. Sears, 6 Ad. & Ell. 474, the rule is stated thus : “ Where one, by his words or conduct, willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time.” And Parke, B., in Freeman v. Cooke, 2 Exch. 662, giving assent to the above rule, adds: “ By the term ‘ willfully,’ however, in that rule, we must understand, if not that the party represents that to be true which he knows to be untrue, at least, that he means his representations to be acted upon, and that it is acted upon accordingly; and if, whatever a man’s real intention may be, he so' conducts himself that a reasonable man would take the representation to be true, and believe that it was meant that he should act upon it, and did act upon it as true, the party making the representation would be equally precluded from contesting its truth.”
From the foregoing, it is fair to assume, that where one, by his acts or declarations, made deliberately and with knowledge, induces another to believe certain facts to exist, and that other rightfully acts on the belief so induced, and is misled thereby, the former is estopped to afterwards set up a claim based upon facts inconsistent with the facts so relied upon, to the injury of the person so misled. Applying this rule reasonably to the case at bar, what answer should be made to the demand that new conditions as to delivery shall now be attached to the receipts ? By their refusal to execute the note with the warehouse receipts attached, Baum & Co. gave the defendants clearly to understand that they would not *261 assent to the condition thus imposed, and as clearly indicated that the possession of apparent title to the goods without condition, save as to payment of government tax and storage, would be insisted upon. Acceding to this, the receipts signed by Levy & Bro. were substituted, and the acceptances taken by defendants in place of the note. This change was desired by Baum & Co., in order that they might make use of the receipts to raise money, and this purpose, or one of equivalent nature, must have been inferred by Levy & Bro. At least, as reasonable men, they ought to have known or inferred it. Of whaj; possible use could the substituted receipts, in the form they were given, have been to Baum & Co., if not for just such purpose ? And it is not improbable that Levy & Bro. assumed that the possession of the receipts, printed in the form they appear, would the more easily enable Baum & Co. to make sale of the goods, and thus the acceptances received by them the more surely be paid. Such expectation would not have been an unreasonable one. At all events, they issued the receipts with notice that they might be so used. Can they now, as against an innocent purchaser, disclaim knowledge of an intention to so use them ?
The receipts were in a form well calculated to deceive. They were gotten up in the similitude of real warehouse receipts. The heading was “ Distillery Warehouse Receipt.” The only conditions attached to delivery are return of receipt and payment of tax and storage. In the body it is recited that the whisky is held for account “ of and subject to the order of G. Baum & Co., deliverable only on return of this receipt to us properly indorsed, and on payment of U. S. government tax and charges on same.” At the foot the notice printed is: “ In order to insure prompt withdrawal, send this warehouse receipt with your order. No whisky will be unbonded unless the warehouse receipt accompanies the order, for credit of the quantity withdrawn.” On the margin of each, as on each warehouse receipt, was printed in full the laws of Kentucky, relating to warehousemen and warehouse receipts, though, except to facilitate deception, that act had no more to do with the receipt than a chapter from the Koran. *262 A purchaser would naturally be led to suppose the receipt to be what its appearance indicated, to regard it, like a bill of lading, as embodying in one paper a receipt and a contract— a receipt as vendor that payment of purchase-money had been made, and a contract as bailee to hold the legal possession (though the manual possession was in Ripy), for the owner, whoever he might be. Taken altogether, a paper better calculated to mislead can hardly be conceived. The finding of the trial court is that plaintiff’s assignors were misled by it. They parted with their money on the faith of it. They were bona fide purchasers. The pledge came to them “ in the due course of business,” and “came into the possession of the plaintiff for value, in the due course of trade, from Walker’s Sons & Co.” These parties had no knowledge that the goods had not been paid for, nor that real warehouse receipts were in the hands of Levy & Bro. Indeed, they had excellent reason for believing that no such receipts existed. Not only was each papár headed “ Distillery Warehouse Receipt,” but, at the foot was the direction: “Send this Warehouse Receipt.” Would any reasonable man have assumed that Levy & Bro. had in their possession other receipts ? The clause in the finding that “plaintiff purchased without knowledge or notice that defendants retained in their possession the warehouse receipts issued by Ripy, except that notice thereof was conveyed upon the so-called warehouse receipts themselves and by the statutes of the United States,” is in reality a finding of law rather than fact, and is but the expression of opinion of the court that such notice was so given. But was it? The statute referred to makes no provision for the issuing of warehouse receipts An order or permit addressed by the collector to the storekeeper is the sole formality necessary to authorize withdrawal. Not only a distiller, but an owner, can store there. To take whisky from bond the former would be required to pay the tax and obtain the necessary permit; the latter, in addition, would simply have to pay storage. So the fact, that, as indicated by the receipts, the whisky was in Ripv’s waz-ehouse, meant only that.it was there.held for the owner, and was notice to nobody beyond that. Ripy had been *263 paid for the whisky, and had no claim save for storage. Inquiry of him, therefore, would have developed only that fact— •already shown by the receipt. This claim plaintiff offered to pay, as well as the tax, before bringing suit.
■ It is not necessary that we find a fraudulent purpose on the part of defendants — gross negligence is sufficient. That, we think, abundantly appears, and they shall not now be heard to attach new conditions. The fair inference from the language of the receipt is, that the property will be delivered to Baum & Co., or their order, upon compliance with the conditions named. If any other claim existed, it should have been stated in the receipt. To assert such a claim now, against an innocent purchaser, is bad faith, and to support it would work ■a fraud on the plaintiff.
The case at bar is clearly distinguishable from that of Bank v. Walbridge, 19 Ohio St. 419. In that case certain ware-housemen (Walbridge & Co.), on application of the owner, by mistake issued to the latter, at different dates, two warehouse receipts for the same property, the last of which the ■owner assigned for value to the plaintiff, to whom the defendants, the warehousemen, on demand, delivered the property. Afterwards, the assignee of the first receipt recovered the property in replevin from the plaintiff, and suit was instituted by him to recover from defendants, Walbridge & Co. The court held that in the absence of all fraud, the defendants were not estopped from showing, as against the plaintiff, the mistake in the giving of the last receipt, as a defense to the action. In the opinion, White, J., uses this language: “ The issuing of the receipt in this case involved no element of bad faith, but was simply a mistake of the defendant, which he was influenced to commit by the application of Lewis, whose ■conduct distinctly implied that no receipt had before been .given for the forty-two barrels.” In the case at bar, there is no element of mistake, but one of gross negligence, the equivalent, in law, of bad faith and fraud. There, the receipt was .issued by mistake; here, it was done intentionally, willfully.
Courts have shown extreme reluctance to permit vendors to ■.contradict instruments of this character. A strong case in *264 point is that of Chapman v. Searle, Adm’r of Whiting, 3 Pick. 38. Whiting gave to one Ludlow a receipted.bill of parcels for 300 barrels of beef, and a certificate that he held them for the latter on storage, Ludlow giving a promissory note for the amount, payable to Whiting, or order. Afterward, the note not being paid, Ludlow made an assignment to plaintiffs, as-trustees for the benefit of creditors, including the beef. In trover by the assignees the court held that the defendant was estopped to say he never had any such goods; that the property vested in Ludlow, and that the defendant had no lien for the price of the goods. See, also, Stonard v. Dunkin, 2 Camp. 344; Freeman v. Cooke, supra, 662; Merchants’ Banking Co. v. Steel Co., L. R. 5 Ch. D. 205, 216, 217; Cuming v. Brown, 9 East. 505.
It is insisted that the receipts were to be acted on only by Baum & Co. — that the contract was exclusively between that firm and the defendants, and that where a representation is made only to one person, no other person can claim it as an estoppel. The very face of the receipts contradicts this claim. The terms imply that they may be assigned. “To be held for account of and subject to the order of G. Baum & Co.,” * * “this receipt properly indorsed,” is the language. The representations in this case cannot be confined to such narrow limit., On the contrary, the representations here made were of that class that are considered as addressed generally to all who may, in the ordinary coui'se of business, have occasion to act upon them, and where a person so acting, may claim them as an estoppel. Pence v. Arbuckle, 22 Minn. 417; Bigelow on Fraud, 89, 90.
The defendants are estopped to set up a vendor’s lien. Judgments below are reversed, and

Judgment for plaintiff,